UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSHUA ALGER,

        Plaintiff,                              No. 18-13280

v.                                         District Judge Matthew F. Leitman
                                                Magistrate Judge R. Steven Whalen

ARMARK, ET AL.,

        Defendants.

                                      /

**REPORT AND RECOMMENDATION**

      On October 19, 2018, Plaintiff Joshua Alger, an inmate in the custody of the Michigan Department of Corrections ("MDOC") filed a *pro se* civil complaint under 42 U.S.C. § 1983, alleging damages arising out of an incident where he injured his teeth after biting into a piece of metal that found its way into his food. Before the Court is a motion for summary judgment filed by Defendant Bobby Echols, a dentist with whom Plaintiff treated following the injury to his teeth [ECF No. 21]. The motion has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). Because Plaintiff did not properly exhaust his administrative remedies before filing his complaint, as required by 42 U.S.C. § 1997e(a), I recommend that the motion be GRANTED, and that Defendant Echols be DISMISSED WITHOUT PREJUDICE.

**I.    FACTS**

      At the time of the events in question, Plaintiff was an MDOC prisoner. He alleges that while eating lunch on April 22, 2015, he bit into a meatball that contained a metal clamp. As a result, two of his teeth were broken, "causing extreme pain." *Complaint*, ECF No. 1, PageID.5. He subsequently lost a third tooth as a result of this incident. *Id*. He states, "I was

told that the MDOC does not fix this type of dental problem, so they removed the teeth instead of fixing them causing irreparable damage." *Id*. He seeks monetary relief for pain, suffering, and mental anguish associated with losing his teeth, and "injunctive relief that his teeth be fixed and the expenses incurred by the food service provider." *Id*.

The only factual allegation in the complaint against Defendant Bobby Echols states as follows:

"Bobby Echols–dentist–Macomb Correctional Facility (MRF)–should have fixed teeth not removed–caused irreparable damage." ECF No. 1, PageID.2.

Appended to Defendant's motion as Exhibit A is the affidavit of Richard D. Russell, Manager of the Grievance Section within the MDOC's Office of Legal Affairs. His duties include overseeing the MDOC's Step III grievance process. ECF No. 21-1, PageID.129. Mr. Russell states that all Step III grievance appeals are recorded on the Grievance Tracking Database, and that he searched that database for Step III grievance appeals filed by Plaintiff Alger associated with his complaint against Defendant Echols. ECF No. 21-1, PageID.131. He states, at ¶ 18 of his affidavit, "I found that Alger has not filed any grievances or appeals to Step III that reference Defendant Echols or which grieve the extraction of Plaintiff Alger's teeth." *Id*.

Also appended to Defendant's motion are Plaintiff's MDOC dental records, indicating the which providers saw Plaintiff on which dates, along with the provider's notes. On May 12, 2015, Plaintiff was seen by Jon Pavitt with regard to the broken tooth incident. At that time, an x-ray was taken, with a follow-up appointment with a dentist to be scheduled. ECF No. 21-1, PageID.149. Plaintiff was first seen by Defendant Echols on May 20, 2015. *Id*. After subsequent complaints of pain, he was again seen by Dr. Echols on June 19, 2015, at which time he was scheduled for an extraction. ECF No. 21-1, PageID.150. Dr. Echols

extracted Plaintiff's tooth on July 13, 2015, following a diagnosis of "nonrestorable per MDOC guidelines irreversible pulpitis chronic discomfort or pain." *Id.* On July 31, 2015, Plaintiff complained that another tooth was hurting. *Id*. On September 16, 2015, he was again seen by Dr. Echols, who scheduled another extraction. ECF No. 21-1, PageID.152. The extraction occurred on September 22, 2015. *Id*. Echols provided follow-up care through November 17, 2015, which was the last time he saw the Plaintiff. ECF No. 21-1, PageID.153.

On July 22, 2016, Plaintiff was seen by a different dentist, Dr. Scott Buckner, DDS, with regard to a third tooth that was causing pain. Dr. Buckner recommended extraction, stating, "non-restorable tooth per MDOC guidelines. Advanced periodontal involvement and tooth should be extracted." ECF No. 21-1, PageID.155. Dr. Buckner performed the extraction the same day. *Id*.

## II.   STANDARD OF REVIEW

Under the Prison Litigation Reform Act (PLRA) of 1996, specifically 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under § 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, "exhaustion" under the PLRA means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 92 (2006). In *Woodford*, the Supreme Court defined "proper exhaustion" as requiring "compliance with an agency's deadlines and other critical procedural rules...." Id., 548 U.S. at 90. Thus, whether a claim is "properly exhausted" under the PLRA requires an examination of the particular institution's administrative rules and

regulations regarding prisoner grievances.

However, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Under *Jones*, it is Defendant's burden to assert non-exhaustion as an affirmative defense. *Id.*; *Grinter v. Knight*, 532 F.3d 567 (6th Cir. 2008).

Under the PLRA, a dismissal for failure to exhaust nonjudicial remedies is without prejudice. *Boyd v. Corrections Corp. of America*, 380 F.3d 989, 994 (6th Cir. 2006) (citing *Knuckles El v. Toombs*, 215 F.3d 640 (6th Cir. 2000)); *McCloy v. Correctional Medical Services*, 794 F.Supp.2d 743, 751 (E.D. Mich. 2011).

### III.   DISCUSSION

#### A.   The MDOC Grievance Procedure

MDOC Policy Directive (PD) 03.02.130 provides prison inmates a detailed procedure for bringing forward complaints.[1] This grievance procedure consists of four acts an inmate must undertake prior to seeking judicial review, each with specific time limits. First, within two business days after becoming aware of a grievable issue, the inmate must attempt to verbally resolve the dispute with those involved. If such an attempt is not possible, or if it is unsuccessful, the inmate must then file a Step I grievance form within five days. The prison staff is required to respond in writing within 15 days, unless an extension is granted by the grievant. If the inmate is not satisfied with the response, he must request a Step II appeal form and file it within ten days after receiving the Step I response.

If the inmate is dissatisfied with the result at Step II, he or she has ten business days to appeal to Step III. The Step III appeal is handled by the MDOC Director or his designee at the Prisoner Affairs Section, Office of Program Services, in Lansing, Michigan. The Step

---

[1] PD 03.02.130 is appended to Defendant's motion as Exhibit B.

III response concludes the standard administrative process.

Moreover, PD 03.02.130 ¶ S requires an inmate to include "the *facts* involving the issue being grieved (i.e., who, what, when, where, why, how)." (Emphasis in original). *See Vandiver v. Martin*, 48 Fed. App'x 517, 2002 WL 31166925, at *2 (6th Cir. 2002) ("The issues [plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to the specific issues raised, and the specific individuals mentioned, in his grievance").

### B.    Application to Defendant Echols

Defendant Echols argues that Plaintiff failed to properly exhaust the claim against him because (1) Echols was not specifically named in any grievance, (2) the claim against him specifically was not raised in any grievance,[2] and (3) Plaintiff has not completed any grievance involving either him specifically or the claim against him through Step III of the MDOC grievance procedure.

In response, Plaintiff points to the two grievance forms that he filed with his complaint. The first, No. ECF-2015-04-1153-09E, was filed at Step I on April 24, 2015, two days after Plaintiff first injured his teeth, and lists the date of incident as April 22, 2015. This grievance was appealed through Step III. ECF No. 1, PageID.7-12. At Step I, it describes how Plaintiff bit into a meatball that contained a metal clip, resulting in two teeth being broken. It concludes, "My teeth should be fixed and the bill paid by ARAMARK. Also steps should be taken to avoid similar occurrences in the future." *Id*. The Step I grievance does not name Defendant Echols, which is logical since Plaintiff did

---

[2] The only factual allegation in the complaint against Defendant Echols is that he "should have fixed teeth not removed–caused irreparable damage." ECF No. 1, PageID.2. Giving this *pro se* complaint a liberal construction, I view this as an Eighth Amendment claim of deliberate indifference to Plaintiff's serious dental needs.

not initially see Echols until the following month on May 15, 2015, and his tooth was not extracted until July 13, 2015.  In his Step II appeal form, submitted on June 16, 2015, Plaintiff states that he is still in pain, that he is being required to pay the costs of fixing his teeth, and that "someone needs to be held responsible for my teeth being broke." ECF No. 1, PageID.10.  His Step III appeal was denied on August 25, 2015.  ECF No. 1, PageID.12.

It should be noted that there are three basic components to Plaintiff's claims. The first is based on the April 22, 2015 incident itself, when Plaintiff first injured his teeth when he bit into the meatball. The target of that claim is ARAMARK, not Echols.  The second claim is based on Plaintiff having to pay for part of the procedure. Again, this does not involve Echols. It is only the third component–that his teeth should have been repaired or restored, not extracted–that involves Echols.  Again, because this grievance was submitted before Echols even saw the Plaintiff or performed the extraction, it cannot support a showing that Plaintiff exhausted his specific claim against Echols.

The second grievance that Plaintiff has submitted is No. MRF-2015-11-2036-01G. It was received at Step I on November 4, 2015, and lists the date of incident as October 10, 2015. In substance, the Plaintiff complains that the prison charge him a $5.00 co-pay for dental services, and that ARAMARK should be responsible for that payment. He states, "My resolve is to get my money back and have Aramark billed." ECF No. 1, PageID.14.  It does not name Defendant Echols, and does not raise the issue of improper dental care.  In addition, it does not appear to have been appealed through Step III. This grievance fails to support a showing of exhaustion as to Defendant Echols.

In his response, Plaintiff argues what might be characterized as a theory of unavailability of an adequate grievance procedure based on impossibility, that is, he could

not have included a complaint against Echols in his April 24, 2015 grievance because Echols did not extract his tooth until months later. *See Response*, ECF No. 25, PageID.178-179. But the April grievance was based on the injury from the contaminated food, not the injury from a dental procedure. What prevented Plaintiff from filing a specific grievance against Echols *after* his tooth was extracted? On July 13, 2015, Plaintiff knew that his tooth had been extracted and he knew that Dr. Echols performed the procedure. In other words, at that time he knew the "who, what, why, where, and how" necessary to formulate a grievance that was compliant with the MDOC Policy Directives.

Plaintiff has also appended an affidavit to his response, in which he states that he has filed hundreds of grievances since being incarcerated, and that none have been resolved to his satisfaction. He adds, "The grievance process is confusing goes in circles and serves no purpose." ECF No. 25, PageID.180. However understandable the Plaintiff's frustration may be, his subjective belief that the grievance process is ineffective does not relieve him of his responsibility under the 42 U.S.C. § 1997e(a) to complete the process before filing a complaint. As the Sixth Circuit noted in *Napier v. Laurel County, Ky.*, 636 F.3d 218, 222 (6th Cir. 2011):

> "This requirement is a strong one. To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[ ] believes the procedure to be ineffectual or futile." (Internal quotations and citations omitted).

Because Plaintiff did not exhaust his claim against Defendant Echols before filing his complaint, Echols must be dismissed.

### IV.    CONCLUSION

I recommend that Defendant's Motion for Summary Judgment [ECF No. 21] be GRANTED, and that Defendant Echols be DISMISSED WITHOUT PREJUDICE.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
United States Magistrate Judge

Dated: April 24, 2020

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was sent to parties of record on April 24, 2020 electronically and/or by U.S. mail.

s/Carolyn M. Ciesla<br>Case Manager